UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TONY PEEBLES,                                                    9-CR-331-A
                                                                          17-CV-463-A
                                        Petitioner,          **DECISION AND ORDER**

        v.

UNITED STATES OF AMERICA,

                                        Respondent.

_____

        *Pro se* petitioner Tony Peebles, a prisoner in federal custody, has filed a Motion to

Vacate, Set Aside, or Correct the Sentence Under 28 U.S.C. § 2255 ("§ 2255 Motion")

(Dkt. No. 2105), and a Motion for Appointment of Counsel (Dkt. No. 2379). For the

reasons set forth below, the § 2255 Motion (Dkt. No. 2105), as amended to include the

new claims in the previously granted Motion to Amend/Correct (Dkt. No. 2194), is

DENIED; and the Motion for Appointment of Counsel (Dkt. No. 2379) is DENIED.

## BACKGROUND

**I.        The Indictments and Plea Offers**

        On November 25, 2009, Peebles was charged in 8 counts of a 25-count

Superseding Indictment (Dkt. No. 9) with RICO and other offenses related to drug-dealing

activities and shootings committed by Peebles and other individuals as members of

Buffalo's 10th Street Gang.  On September 15, 2010, Peebles was charged in 11 counts

of a 62-count Second Superseding Indictment (Dkt. No. 69).

        On March 17, 2011, the Government conveyed a written plea offer ("Plea Offer #1)

(Dkt. No. 2340-1), which contemplated that Peebles would plead guilty to Count 1 (RICO

Conspiracy, in violation of 18 U.S.C. § 1962(d)), Count 2 (RICO, in violation of 18 U.S.C.

§ 1962(c)), and Count 18 (discharge of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) of the Second Superseding Indictment.  The parties contemplated that with their calculations of the total offense level and a Criminal History Category II, the Peebles would be facing an aggregate Guidelines range of 480 months to life in prison. Pursuant to Plea Offer #1, Peebles would be required to cooperate and testify against co-defendants but without the benefit of a downward departure motion pursuant to United States Sentencing Guideline Section 5K1.1 or 18 U.S.C. § 3553(e), or Federal Rules of Criminal Procedure 35(b) for a reduction of Peebles' sentence.  Plea Offer #1 expired by its terms on October 4, 2011, because Peebles was uninterested in cooperating (Dkt. No. 2340 at 5).

Peebles was later charged, on April 28, 2011, with a Third Superseding Indictment (Dkt. No. 226), and on February 2, 2012, Peebles was charged with 29 counts (Counts 1, 2, 5-7, 21-35, 52-54, 57-59, 62, 63, and 66) of the 74-count Fourth Superseding Indictment (Dkt. No. 408), namely, with RICO conspiracy (Count 1), RICO (Count 2), assault with a dangerous weapon in aid of racketeering (Counts 5, 25, 28, 30, 31, 53, and 58), attempted murder in aid of racketeering (Counts 6, 21, 24, 33, 52, and 57), possession and discharge of a firearm in furtherance of a crime of violence (Counts 7, 23, 27, 29, 32, 35, 54, and 59), attempted assault with a dangerous weapon in aid of racketeering (Counts 22 and 34), assault in aid of racketeering (Count 26), narcotics conspiracy (Count 62), possession of firearms in furtherance of a drug crime (Count 63), and possession of cocaine base with intent to distribute (Count 66).

The Government conveyed Plea Offer #2 (Dkt. No. 2340-4) on or about January 24, 2013, which contemplated that Peebles would plead guilty to Count 1 (RICO

Conspiracy, in violation of 18 U.S.C. § 1962(d)) and Count 27 (possession and discharge of firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii) and 18 U.S.C. § 2) of the Fourth Superseding Indictment (Dkt. No. 408). The parties contemplated that with their calculations of the total offense level and a Criminal History Category II, Peebles would be facing an aggregate Guidelines range of 412 months to 485 months.  Pursuant to Plea Offer #2's cooperation section, Peebles would be required to cooperate, if the Government was satisfied that Peebles had fully complied with its terms and conditions, the Government would move to depart downward 2 levels as provided in Guidelines § 5K1.1 and/or 18 U.S.C. § 3553(e); if that motion was granted by the Court, it would result in a contemplated aggregate Guidelines range of 292 to 365 months' imprisonment.  According to the Government, "[t]he cooperation section would have left open the potential for the government to move for a greater 5K, depending on the quality, nature, and extent of [Peebles'] cooperation and testimony."  (See Dkt. No. 2340 at 8 & n.4; Dkt. No. 2340-4 at 22-23).  If convicted on all 29 counts against him in the Fourth Superseding Indictment, Peebles faced life sentences on each of the two RICO counts (the conspiracy count and the substantive count), and an aggregate 210 years in mandatory minimum sentences based upon the various counts charging violations of 18 U.S.C. §§ 924(c)(1) and 924(c)(1)(A)(iii), which would have been consecutive to any other sentences, including a narcotics conspiracy with a 10-year mandatory minimum sentence. (Dkt. No. 2340 at 2-4).

Peebles' trial was scheduled to commence on March 25, 2014. (Dkt. No. 1182 [Pretrial Order).  The Court later adjourned jury selection to March 26, 2014, with a final

pretrial conference scheduled for March 25, 2014. (Dkt. No. 1278 [Text Order]; 03/24/2014 notation).

At the final pretrial conference on March 25, 2014(Dkt. No. 2340-5 [transcript of 3/25/2014 Pretrial Conference]; 03/25/2014 Minute Entry), it was noted by the Government that Plea Offer #2 had expired on March 11, 2014, because Peebles remained unwilling to cooperate. The Government stated it was "no longer interested in his cooperation at all," and "[a]s you know, Judge, we're at trial. That ship has sailed. So, it's through no fault of Mr. Cantwell [defense counsel] that the defendant decided not to avail himself of cooperation . . . The defendant chose not to cooperate."

E. Carey Cantwell, Esq. ("Cantwell"), who had represented Peebles since the inception of the case, stated that Peebles had asked him to file a motion to withdraw as counsel for substitute counsel. Cantwell also reported that the Government had verbally conveyed a third plea offer,[1] which he had transmitted to Peebles by letter; however, Peebles was refusing to accept mail from or otherwise communicate with him and Cantwell did not know whether Peebles received, read, or knew about that letter.

For his part, Peebles complained largely about the pace at which Cantwell was providing discovery documents to him and claimed that Cantwell had not provided any of the discovery to look over. Cantwell explained that he had received the last three discs of discovery from the Government that same day, and he was downloading copies of the voluminous discovery documents for Peebles; however, Peebles did not have access to

---

[1] According to the Government, that "unapproved discussion with Mr. Cantwell" was for "the prospect of a range of 292 to 365 months."

discs so all discovery had to be on papers, and the jail where he was detained limited the number of documents Peebles could have in his cell at any given time.

Since it was the eve of trial, the Court declined to assign substitute counsel and informed Peebles that he could proceed *pro se*, with jury selection to commence on March 27, 2014. The Court directed Cantwell to act as standby counsel. The Government raised its concern that Peebles should not be provided copies of any Government witnesses' 18 U.S.C. § 3500 material, even in light of his *pro se* status.   The Court directed the Government to provide papers copies of the 18 U.S.C. § 3500 material to defense counsel prior to the next appearance.

On March 26, 2014, the Government conveyed approved Plea Offer #3 (Dkt. No. 2340-7) just prior to the scheduled status conference. Plea Offer #3 provided that Peebles would plead guilty to Counts 1 and 27 of the Fourth Superseding Indictment (the same as in Plea Offer #2). The parties contemplated that with their calculations of the total offense level and a Criminal History Category I (rather than Category II as in Plea Offer #2), Peebles would be facing an aggregate Guidelines range of 382 to 447 months.  The plea agreement contemplated a two-level § 5K1.1 motion for completed cooperation which, subject to Court approval, would result in an aggregate Guidelines range of 292 to 365 months.

At the March 26, 2014 status conference (Dkt. No. 2340-6 [transcript of 3/26/2014 Status Conference]; 03/26/2014 Minute Entry), Peebles appeared *pro se*, with Cantwell as standby counsel. The Assistant U.S. Attorney ("AUSA") noted that he had met with Peebles (*pro se*) and Cantwell (as standby counsel) earlier that day and advised Peebles of what the plea offer would be.  After the meeting, Cantwell called the AUSA and stated

5

Peebles wanted what they had discussed written up in agreement form, which was then approved by the U.S. Attorney and copies had been provided to Peebles and Cantwell. The AUSA explained that it resulted in a Guidelines range of 292 to 365 months.

The AUSA explained that no further plea offers would be forthcoming, and the transcript indicates that Peebles understood he was facing significant mandatory minimum sentences and a potential life sentence if convicted after trial. The Court gave Peebles another night to think about Plea Offer #3 and make a decision about whether to accept the plea or proceed to trial by no later than 3:00 p.m. the following day.  The Court also assigned a second CJA attorney, Clarence Johnson, Esq. ("Johnson") to act as additional standby counsel ("co-standby counsel") for Peebles, so that he would have the benefit of two attorneys' expertise to discuss Plea Offer #3 with him and because Peebles had indicated some issues with Cantwell. If Plea Offer #3 did not sound agreeable to Peebles, the Court would pick a jury not the next day, as previously scheduled, but the following day, which was a Friday—to allow Peebles more time to discuss Plea Offer #3 with standby counsel and his family if he chose to do so.  The Court noted, "I want to give you as much time or make sure you understand.  You've got two very experienced defense lawyers now to help you give you some advice regarding this whole issue, okay? You're entitled to a trial.  I can't get involved in the plea agreement, okay?  That's not my – I'm prohibited.  I don't want to be involved in it.  That's something that you have to decide for yourself, okay?"

## II.    The Guilty Plea

On March 27, 2014, the deadline for accepting Plea Offer #3, Peebles appeared *pro se*, with Cantwell and Johnson as standby counsel (03/27/2014 Minute Entry). The

transcript (Dkt. No. 2340-8) indicates that Peebles had spoken to his family, Cantwell, and Johnson about the plea and wanted to accept it. When the Court asked Peebles whether there was "anything else" he wanted as far as legal representation was concerned, Peebles replied, "I'm okay.  We can proceed."

The Court asked the AUSA to go through the plea agreement (Dkt. No. 1310 [Plea Agreement]) and explain the significance of its provisions; the Court explained this as well. The AUSA explained the maximum sentencing exposure (*i.e.*, life imprisonment on the RICO conspiracy count, and life imprisonment on the firearms count), any mandatory minimum sentence (*i.e.*, 10 year on the firearms count, to be served consecutively to any other term of imprisonment), the factual basis for the plea, how the Government would prove the factual basis at trial, the applicable Guidelines (*i.e.*, an aggregate Guidelines term of imprisonment of 382 to 447 months, but 292 to 365 months if the Court was to accept the Government's § 5K1.1 motion), and the waiver of his right to appeal . The AUSA further explained, when prompted by the Court, that if Peebles was convicted on all counts at trial, Peebles would be facing "200 years mandatory minimum plus 480 . . . months to life." Peebles confirmed that he understood everything, and replied, "No", when asked if he had any questions.

The Court asked Peebles, "If I were to assign an attorney to you for trial, . . . would you go to trial in this matter?", to which Peebles responded, "No." The Court proceeded, "Now, we talked about if you went to trial – and I'm not in any way at all trying to suggest to you one way or the other. I'm not involved in this process at all.  I want to make sure, though, that if you were to go to trial, I would carefully reconsider in appointing an attorney to you. And if you went to trial, you'd face the consequences that we talked about here

today. But, again, this is something you and only you, can make this decision." Peebles stated he understood this. The Court then asked, "What is your position, as far as if I were to appoint another attorney to you, not Mr. Johnson and not Mr. Cantwell?" Peebles replied, "No." The Court queried, " . . . you would not want to go to trial, is that what you're saying?", and Peebles responded, "Yes." The Court continued with this line of questioning, ". . . you're still saying, Judge, if you appointed another attorney for me, I still would not want to go to trial. I still want to take the plea agreement, as we just read here in court. Is that true?" Peebles responded, "Yes." The Court followed with, "No question about that?", and Peebles responded, "No question, no." Cantwell and Johnson both conveyed to the Court that Peebles indicated to them he did not want to go to trial, even with another attorney.

During an extensive colloquy with Peebles, the Court ascertained that Peebles' plea was knowing and voluntary, *i.e.*, his mental condition was sound; no one had threatened, coerced, or forced him to plead guilty; and he understood the various rights he was giving up by pleading guilty as well as the consequences of being convicted by guilty plea. The Court accepted Peebles' plea of guilty to Counts 1 and 27 of the Fourth Superseding Indictment.

## III. Sentencing

Although sentencing was initially set for July 30, 2014, it was adjourned after Peebles asked for new CJA counsel. (07/30/2014 Minute Entry ["Deft was previously scheduled to be sentenced on this date, however, Deft did not sit for his presentence interview as he does not want E. Carey Cantwell, nor Clarence Johnson to act as his standby counsel. The Court advises Deft that it will seek new CJA counsel for Deft."]).

8

The Court assigned Kevin C. Condon, Esq. ("Condon") on August 20, 2014 under the CJA to represent Peebles, and the Court relieved both Cantwell and Johnson and standby defense counsel. (08/20/2014 Minute Entry).

After a series of adjournments, Peebles appeared for sentencing on December 13, 2016, with Condon. (12/13/2016 Minute Entry; Dkt. No. 2110 [Transcript of Sentencing]). Condon indicated that he had reviewed the presentence investigation report ("PSR") and that he had reviewed same with Peebles. The Court noted that there was no dispute concerning the facts in the PSR and that there were no objections to Probation's conclusions as to the applicable Guidelines. The Court set forth the applicable Guidelines and granted the Government's § 5K1.1 motion for a downward departure of 2 levels, bringing the aggregate Guidelines range to 292 to 365 months' imprisonment. When defense counsel had an opportunity to speak, Condon argued various mitigating factors and requested that the Court sentence Peebles "within the guideline range and at the low end of the guideline range."

Consistent with the plea agreement, the Court imposed an aggregate sentence of 295 months' imprisonment (235 months on Count 1, and 60 months on Count 27, to run consecutive to Count 1). (12/13/2016 Minute Entry; Dkt. No. 2110 [Transcript of Sentencing]; Dkt. No. 2082 [Judgment]). Peebles did not file a notice of appeal.

## IV.    Habeas Proceeding

In his timely-filed § 2255 Motion (Dkt. No. 2105), Peebles asserts that Cantwell, Johnson, and Condon were ineffective because they: (1) failed to obtain a plea offer with a sentence of 180 months' incarceration (15 years); (2) failed to challenge the PSR; (3) failed to convince him to go to trial because he allegedly faced only 300 months (25 years)

if convicted on all counts; and (4) failed to file a notice of appeal. Peebles also contends that his 18 U.S.C. § 924(c) conviction must be vacated in light of Dean v. United States, 137 S. Ct. 1170 (2017). The Government filed a Response to Motion (Dkt. No. 2178), with Exhibits A—D (Dkt. Nos. 2178-1—2178-4). In addition, pursuant to the Court's order, the Government filed an affirmation from Condon (Dkt. No. 2158) who denied that Peebles asked him to pursue an appeal.

Peebles then filed a *pro se* Motion to Amend (Dkt. No. 2194), asserting additional grounds of ineffective assistance of counsel: (1) Johnson had a conflict of interest due to his alleged dual representation of a rival gang-member indicted in a different case (Dkt. No. 2194 at 1); (2) Cantwell, Johnson, and Condon "belatedly informed him of the Government's plea agreement that involved a [228-month] sentence,[2] causing it to expire" (id. at 5-6); (3) Condon should have explored the possibility of "resuscitating" the alleged [228-month] plea offer or moving to withdraw the plea if that were not possible (id. at 12-13); and (4) Peebles' requests for substitute counsel created *per se* conflicts of interest with Cantwell and Johnson (id. at 23-24).

The Motion to Amend was transferred to Hon. Frank P. Geraci, Jr. (Dkt. No. 2306), who granted it via text order (Dkt. No. 2307).  Thus, the operative pleading consists of the claims in the § 2255 Motion (Dkt. No. 2105) and the Motion to Amend (Dkt. No. 2194). At Judge Geraci's direction (Dkt. No. 2330), the Government filed a Response to Amended Claims (Dkt. No. 2340) with Exhibits A—I (Dkt. Nos. 2340-1—2340-9).

---

[2] For ease of review in conjunction with the "Background" section of this Decision and Order, wherever Peebles refers to an alleged plea offer or potential sentence in terms of years, the Court has converted those years to months.

Peebles filed a letter dated November 1, 2021, which was docketed as a Motion for Appointment of Counsel (Dkt. No. 2379).

## DISCUSSION

**I.    Motion to Vacate, Set Aside or Correct Sentence**

**A.  Section 2255**

"To prevail under § 2255, a defendant must demonstrate either the existence of a 'constitutional error . . . or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" Donaldson v. United States, No. 09-CR-321A, 2018 WL 703102, at *1–2 (W.D.N.Y. Feb. 5, 2018) (quoting United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (ellipsis in original; internal quotation marks omitted)). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b).

However, "a district court need not assume the credibility of factual assertions, as it would in civil cases, where the assertions are contradicted by the record in the underlying proceeding." Puglisi v. United States, 586 F.3d 209, 214 (2d Cir. 2009); see also Pham v. United States, 317 F.3d 178, 184 (2d Cir. 2003) (in § 2255 motions, district court is permitted to decide disputed facts on the basis of written submissions"). And "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion.'" Puglisi, 586 F.3d at 213 (quoting Rules Governing § 2255 Proceedings for the United States District Courts, Rule 4(b), 28 U.S.C. foll. § 2255).

Because Peebles is proceeding *pro se*, the Court "must . . . construe his pleadings liberally and in a way that raises the strongest arguments the pleadings suggest." Donaldson, 2018 WL 703102, at *2 (citation omitted). To the extent possible, the Court assesses Peebles' motion in this context. Id.

### B. Ineffective Assistance of Counsel

"To prevail on an ineffective assistance of counsel claim, a defendant must satisfy the two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 687-88, 691-93 (1984), demonstrating that: (1) counsel's performance was objectively deficient, and (2) the defendant was actually prejudiced as a result." Donaldson, 2018 WL 703102, at *2 (citing Bennett v. United States, 663 F.3d 71, 84 (2d Cir. 2011)). As discussed below, Peebles cannot demonstrate either prong of Strickland regarding any of his claims.

### 1. Failure to Convey a 228-Month Plea Offer and to Obtain a 180-Month Sentence

Peebles contends that Cantwell, Johnson, and Condon failed to convey a plea offer that included a sentence promise of 228 months and failed to obtain a plea offer with a 180-month sentence promise. The Government counters with proof that it never conveyed, informally or formally, any plea offer with sentencing exposure less than the Guidelines range in Plea Offer #3, let alone offers with 228-month or 180-month sentences.

" [A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 566 U.S. 134, 145 (2012). At the same time, "[l]ogic dictates . . . that to establish . . . prejudice [from the failure to convey a plea offer], the

petitioner must begin by proving that a plea agreement was formally offered by the government." <u>Kingsberry v. United States</u>, 202 F.3d 1030, 1032 (8th Cir. 2000).

The Court finds that the Government's statements placed on the record contemporaneously with the plea negotiations, along with its submissions in connection with this habeas proceeding, conclusively establish that there were only three offers authorized by the Government and conveyed to Peebles. As summarized in the "Background" section of this Decision (<u>see supra</u>, at 1-3), not one of those written plea offers contemplated a 228-month or 180-month sentence. Furthermore, there is no suggestion in the record that there ever was a verbally conveyed or informal plea offer carrying a 228-month or 180-month sentence. Neither Peebles nor any of his attorneys ever mentioned a plea offer with a 228-month or 180-month sentence at any of the Court appearances. In addition, the AUSA involved in Peebles' case, AUSA Joseph Tripi, has submitted an affidavit averring that at no time during the criminal proceedings did Peebles allege that the Government made a 228-month plea offer or that his attorneys failed to timely advise him of such an offer. (Dkt. No. 2340-9 at 7). The AUSA avers that had Peebles made such a claim, either on the record in Court or during their interactions, the AUSA would have promptly corrected him and would have advised him there had never been, nor would there ever be, a 228-month plea offer. (<u>Id.</u>).

Peebles' vague, unsubstantiated assertions are insufficient to raise a question of fact warranting further evidentiary exploration about the purported existence of a plea offer with a 228-month or 180-month contemplated sentence. <u>See United States v. Aiello</u>, 814 F.2d 109, 113-14 (2d Cir. 1987) ("Airy generalities, conclusory assertions and hearsay statements will not suffice [to avoid denial of a § 2255 motion without a hearing]

13

because none of these would be admissible evidence at a hearing."). Because Peebles has not established that there were any plea offers with 228-month or 180-month sentences tendered by the Government, Peebles cannot show that his attorneys breached a duty to convey such a plea offer to him, or that he was prejudiced by their representation in this regard.

### 2. Failure to Convince Petitioner to Go to Trial

Peebles faults Cantwell and Johnson for failing to convince him to go to trial since, according to Peebles, they told him he faced a maximum of only 300 months in prison if convicted of all 29 counts in the Fourth Superseding Indictment. This claim is unsupported by the record.

As detailed in the Government's Response to Amended Claims (Dkt. No. 2340), Peebles faced multiple life sentences on the RICO counts in the Fourth Superseding Indictment. In addition, he was exposed to 210 years in mandatory minimum sentences based on the various counts charging violations of 18 U.S.C. §§ 924(c)(1)(A) and 924(c)(1)(A)(iii); these sentences would have been consecutive to any other sentences, including a narcotics conspiracy with a 10-year mandatory minimum. (Dkt. No. 2340 at 3-4). Had Cantwell and Johnson told him that he had only a 300-month exposure on the Fourth Superseding Indictment, they would have been profoundly incorrect. Cantwell and Johnson did not perform deficiently by correctly advising Peebles about his sentencing exposure, and Peebles was not prejudiced as a result of their accurate advice.

### 3.  Failure to "Resuscitate" 228-Month Plea Offer or Move to Withdraw Plea

Peebles complains that Condon did not attempt to "resuscitate" a purported 228-month plea offer. Condon cannot be found ineffective for failing to restart negotiations on a plea offer that never existed, and Peebles was not prejudiced because any "resuscitation" attempt by Condon had no chance of success. See United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999) ("Failure to make a meritless argument does not amount to ineffective assistance."), cert. denied, 531 U.S. 811 (2000).

According to Peebles, if Condon was unable to reopen plea discussions, he should have filed a motion to withdraw the plea "based on the conduct of attorneys Cantwell and Johnson in failing to timely convey th[e] [228-month] plea agreement to him." (Dkt. No. 2194 at 13). As discussed above (see supra, at 8-9), no 228-month plea offer was ever on the table in Peebles' case, and his attorneys cannot be found ineffective for failing to communicate a non-existent offer. The argument that Peebles wanted Condon to raise as the basis for withdrawing the plea was without merit and would not have met the Second Circuit's "stringent" standard for withdrawing a guilty plea. United States v. Doe, 537 F.3d 204, 211 (2d Cir. 2008). Peebles' mere "change of heart" "is not a sufficient reason to permit withdrawal of a plea." United States v. Gonzalez, 970 F.2d 1095, 1100 (2d Cir.1992). Condon cannot be found ineffective for failing to make a meritless motion, and Peebles was not prejudiced because a motion to withdraw his plea had no chance of success. United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995) ("[T]he failure to make a meritless argument does not rise to the level of ineffective assistance.").

### 4.  Conflicts of Interest

"An attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and defendant's interests diverge with respect to a material factual or legal issue or to a course of action.'" United States v. Schwarz, 283 F.3d 76, 91 (2d Cir.2002) (quoting Winkler v. Keane, 7 F.3d 304, 307 (2d Cir. 1993), cert. denied, 511 U.S. 1022 (1994)). "The defendant's mere assertion, however, that his attorney is providing less than constitutionally effective assistance, which requires the attorney to defend his preparation and strategy, is not itself sufficient to create a divergence of the attorney's interests from those of the defendant." United States v. Jones, 482 F.3d 60, 75 (2d Cir. 2006) (citing United States v. Moree, 220 F.3d 65, 71–72 (2d Cir. 2000); United States v. White, 174 F.3d 290, 296 (2d Cir. 1999)).

Peebles contends that his request to replace Cantwell with new counsel created a per se conflict of interest. This contention is without merit. As the Second Circuit observed, "[i]t would be an understatement to observe that disputes like the one between" Peebles and Cantwell concerning defense strategy "arise frequently, and such disagreements often culminate in a defendant's request for substitute counsel." White, 174 F.3d at 296. The Second Circuit has consistently rejected such attempts to dress up a "routine disagreement with his appointed counsel over defense strategy as a conflict of interest." Id.

Because the only basis asserted by Peebles for his claim that Cantwell had a conflict of interest is that Peebles sought to replace him because they disagreed as to tactics, he has not shown an actual conflict of interest. See Jones, 482 F.3d at 75; see also White, 174 F.3d at 296 (no conflict of interest where defendant "merely expressed

16

[to the trial court] disagreement with his attorney over whether to file certain motions, to pursue certain evidentiary leads, to object to the introduction of certain evidence at trial, and to call certain witnesses at trial and at a sentencing hearing").

Peebles next argues that Condon's affirmation denying Peebles' claim about the request to file a notice of appeal created a *per se* conflict of interest. However, at the time he filed the affirmation, Condon was no longer representing Peebles. Furthermore, mere disagreement between attorney and client does not give rise to an actual conflict. See, e.g., United States v. Mincey, 327 F. App'x 709, 711 (9th Cir. 2009) (unpublished opn.) (finding no actual, legal conflict of interest where counsel spoke out against defendant in an apparent effort to extricate himself from difficult attorney-client relationship; counsel's concern that defendant may have lied and been conniving simply does not create an actual, legal conflict of interest) (citing Plumlee v. Masto, 512 F.3d 1203, 1210 (9th Cir. 2008) (en banc) (distinguishing "legal conflicts of interest" from the "the word 'conflict' [as it is] used in common parlance to describe a personality conflict, an artistic conflict, a family conflict, and many other sorts of antagonism—even war")).

Regarding Johnson, who was appointed to act as additional standby counsel alongside Cantwell, Peebles contends that there was a dual-representation issue. "In the multiple representation context, an attorney has an actual, as opposed to a potential, conflict of interest when 'during the course of the representation, the defendants' interests . . . diverge with respect to a material factual or legal issue or to a course of action.'" United States v. Fulton, 5 F.3d 605, 609 (2d Cir.1993) (quoting Cuyler v. Sullivan, 446 U.S. 335, 356 n. 3 (1980)). As discussed below, the records demonstrate that there was no conflict of interest between Johnson and Peebles.

At the March 26, 2014 appearance (Dkt. No. 2340-7), the parties discussed with the Court whether Johnson had a conflict of interest based on his representation of a defendant, Efrain Hidalgo ("Hidalgo"), in a separate RICO case assigned to this Court, 11-cr-151-RJA-HKS-1. Apparently, Hidalgo is a leader of Checko's Crew/7th Street Gang, whose members are rivals and targets of Peebles and his 10th Street Gang. (Dkt. 2340 at 27 & n.8).   The AUSA stated that he did not anticipate Johnson's representation of Hidalgo to become a problem in the future, but he could not make any assurances. The Court inquired generally as to whether Plea Offer #3 involved cooperation, and the AUSA responded that it "would provide for two levels for completed cooperation for a *past* proffer, but *nothing in the future is contemplated*." (Dkt. No. 2340-7 at 11 [emphases added]).

Based on the record before the Court, Johnson was not operating under an actual conflict of interest. As an initial matter, Johnson accepted appointment as additional standby counsel for the limited purpose of ensuring that Peebles fully understood his rights under Federal Rules of Criminal Procedure 11 in connection with the pending plea offer; Johnson had no other role in the case. By the time Peebles pled guilty the following day, he was acting *pro se*. It is well-settled that there is "no constitutional right to hybrid representation," and, "without a constitutional right to standby counsel, a defendant is not entitled to relief for the ineffectiveness of standby counsel." United States v. Morrison, 153 F.3d 34, 35 (2d Cir. 1998) (internal citation omitted).

Furthermore, Peebles and Hidalgo were facing separate criminal proceedings. By the terms of his plea agreement, Peebles would not be required to provide any further cooperation with the Government. Thus, once he pled guilty, that obviated the possibility

18

that his interests and Hidalgo's could be adverse. Finally, Peebles did not object to the dual representation. Under these circumstances, no Sixth Amendment violation occurred. See Cuyler, 446 U.S. at 347 ("Nothing in the circumstances of this case indicates that the trial court had a duty to inquire whether there was a conflict of interest. The provision of separate trials for Sullivan and his codefendants significantly reduced the potential for a divergence in their interests. No participant in Sullivan's trial ever objected to the multiple representation.").

### 5.  Failure to Object to the PSR

Peebles asserts that he asked Cantwell and Condon to challenge his PSR "to no avail." As an initial matter, no ineffective assistance claim lies against Cantwell because, at the time the PSR was prepared, Cantwell had long since been relieved of representing Peebles. (See 08/20/2014 Minute Entry (relieving Cantwell and Johnson as standby defense counsel); Dkt. No. 1488 (setting 11/3/2014 as due date for initial PSR); Dkt. No. 2085 [PSR, filed on 12/30/2016]).

The Court turns next to the allegation against Condon. According to Peebles, Condon told him that he "should get no more than 192 months 16 years since [his] P.S.R. was wrong." (Dkt. No. 2015 at 13). This conclusory assertion about what Condon told Peebles is undermined by the fact that Condon filed no objections to the PSR and did not object to the PSR at sentencing. Peebles also asserts Condon refused his request to "argue 2 points for the gun or downward departures like category 2 to 1," but he did not do so. (Id.). Peebles does not elaborate on the legal or factual bases for these vaguely stated objections or demonstrate how, if they had been successfully asserted, there is a reasonable probability that he would have received a shorter sentence. Therefore, he

cannot demonstrate prejudice as a result of Condon's lack of objection. See Santiago-Diaz v. United States, 299 F. Supp. 2d 293, 302 (S.D.N.Y. 2004) (rejecting ineffective assistance of counsel claim based on petitioner's conclusory allegation that counsel failed to object to the pre-sentence investigation report, where petitioner failed to identify any specific objections that should have been made) (citing Gonzalez v. United States, 722 F.3d 118, 131 (2d Cir. 2013)). To the extent Peebles' allegation may be interpreted as contending that the Court erroneously adopted the PSR's recommendations or misapplied the Sentencing Guidelines, he has not shown he was constitutionally entitled to additional Guidelines adjustments or that the Court committed any fundamental errors of fact to render his sentence "'irregular and invalid' that relief under § 2255 would be appropriate." Bokun, 73 F.3d at 12 (citing United States v. Addonizio, 442 U.S. 178, 186 (1979); further quotation omitted).

### 6.   Failure to File a Notice of Appeal

Peebles claims that he asked Condon to "file an appeal for all appealable issues," but, despite assuring him he would do so, Condon never filed a notice of appeal. (Dkt. No. 2105 at 14; emphasis in original). In his affirmation submitted at the Court's request, Condon states that he "discussed the right to appeal and the time limits [for] doing so with Mr. Peebles on several occasions, both before and after his sentencing." (Dkt. No. 2158, ¶ 4). However, Condon continued, "[f]ollowing Mr. Peebles's sentencing, he did not, either in writing or during [their] phone conversations, ask [Condon] to file a notice of appeal on his behalf." (Id., ¶ 5).

The Supreme Court has held that, even where, as here, a defendant waives his right to appeal his sentence under the terms of a plea agreement, an attorney's failure to

file a requested notice of appeal is presumed to be prejudicial when it forfeits the appellate proceeding. See Roe v. Flores-Ortega, 528 U.S. 470, 483-84 (2000); see also Campusano v. United States, 442 F.3d 770, 775 (2d Cir. 2006). The Second Circuit has instructed district courts, faced with a claim that an attorney disregarded a request to file a notice of appeal, to conduct "a hearing" "pursuant to § 2255 to determine whether the client requested the appeal[,]" id. at 776, "without assessing the merits of the requested appeal," id. However, the Second Circuit explained, under the "relatively simple fact-finding" proceedings it requires, the district court "has discretion to determine if a testimonial hearing will be conducted." Id. (citing Chang v. United States, 250 F.3d 79, 85-86 (2d Cir. 2001)). Thus, the district court's conclusion that a "hearing may be warranted . . . does not imply that a movant must always be allowed to appear . . . for a full hearing." Chang, 250 F.3d at 85 (cited with approval in Campusano, 442 F.3d at 776).

Peebles has offered nothing to rebut Condon's affirmation indicating that Peebles never asked Condon to file a notice of appeal. For instance, Peebles has failed to provide any specific details about the alleged conversation with Condon, such as the date on which it took place and where it occurred, which specific issues he wanted Condon to have raised on direct appeal, what Condon said in response, or "an explanation as to why these issues were meritorious or at least colorable, or suggestions as to how to overcome the preclusive effect of the appellate rights waiver . . . ." Douchette v. States, No. 6:10-CR-06058-MAT, 2017 WL 2931385, at *5 (W.D.N.Y. July 10, 2017); accord De Leon v. United States, No. 6:18-CR-06094-FPG, 2020 WL 3269139, at *9 (W.D.N.Y. June 17, 2020). Under these circumstances, a hearing would add nothing to the record and would be a waste of judicial resources. See id. (citing Chang, 250 F.3d at 85; Nicholson v. United

States, 566 F. Supp. 2d 300, 304-05 (S.D.N.Y. 2008) (detailed attorney affirmations contradicting § 2255 petitioner's claim that he asked his lawyers to file a notice of appeal were sufficient to obviate the need for an evidentiary hearing, particularly since petitioner offered no reply to those affirmations); Florez v. United States, No. CV-00-5073(DGT), 2007 WL 162764, at *4 (E.D.N.Y. Jan. 18, 2007) ("The determinative issue is whether or not [the § 2255 petitioner] directed [his lawyer] to file a notice of appeal. A review of the papers submitted by the parties, including a detailed affidavit from [the lawyer], are sufficient to decide this issue; a full testimonial hearing is unnecessary."); see also Cruz-Santos v. United States, No. 08 CR. 747 (LBS), 2010 WL 1372682, at *3 (S.D.N.Y. Mar. 30, 2010) ("Petitioner's failure to put forth any evidence supporting his unsworn allegation, in the face of his attorney's sworn statement that no request was made, supports a finding that Petitioner made no such request from his counsel."); Shef v. United States, No. 06CV2091(ARR)(CLP), 2007 WL 812104, at *5 (E.D.N.Y. Mar. 14, 2007) ("After being confronted with [counsel]'s statement [that he was never asked to file a notice of appeal], the subsequent papers filed by petitioner's counsel do not address this subject. In addition, petitioner also fails to provide information to substantiate his assertion, such as which of his two attorneys he asked to file a notice of appeal, the time and means that he communicated this request, and the grounds on which he planned to appeal. After reviewing the record, the count finds no basis to credit petitioner's unsworn assertion that petitioner expressly communicated that he wanted his attorney to file a notice of appeal.").

### 7. Vacatur of the § 924(c) Conviction Under Dean

Peebles contends that his § 924(c) conviction (Count 27) must be vacated in light of Dean, 137 S. Ct. 1170. In that case, decided April 3, 2017, the Supreme Court held

that when a defendant is facing two consecutive sentences—one for a predicate offense, which does not carry a mandatory minimum sentence, and one for an offense under 18 U.S.C. § 924(c), which does carry a mandatory minimum—the judge has the discretion to consider the mandatory sentence when deciding the proper time to be served for the predicate offense. Id. at 1177–78. The Supreme Court determined that "[n]othing in § 924(c) restricts the authority conferred on sentencing courts by [18 U.S.C.] § 3553(a) and the related provisions to consider a sentence imposed under § 924(c) when calculating a just sentence for the predicate count." Id. at 1176–77. "[S]o long as it imposes the mandatory minimum 'in addition to' the sentence for the violent or drug trafficking crime[,]" id. at 1177, a district court does not violate the terms of § 924(c). The Supreme Court further explained, by way of example in the Dean case, that "[n]othing in [the] language [of § 924(c)] prevents a district court from imposing a 30-year mandatory minimum sentence under § 924(c) [which Dean faced because he was a second-time offender under the statute] and a one-day sentence for the predicate violent or drug trafficking crime, provided those terms run one after the other." Id.

In other words, as explained by the Second Circuit, Dean "held that a sentencing judge is not prohibited from considering the severity of a mandatory consecutive minimum penalty when sentencing a defendant on a separate count." United States v. Waite, 12 F.4th 204, 216 (2d Cir. 2021).

Unless Dean is retroactively applicable, it does not apply to Peebles, who was sentenced on December 29, 2016. The circuit courts of appeal that have considered the issue have determined that Dean is not a substantive constitutional rule and, moreover, has not been made retroactively applicable to cases on collateral review. See Garcia v.

23

United States, 923 F.3d 1242, 1244-45 (9th Cir. 2019) ("The Court's decision in Dean did not interpret—or even mention—the Constitution. Rather, Dean's rule is rooted in the Court's interpretation of § 924(c). . . .Even if Dean's rule were constitutional, Garcia's application fails because the Supreme Court has not made the rule retroactive to cases on collateral review."); Harper v. United States, 792 F. App'x 385, 394 (6th Cir. 2019), cert. denied, 141 S. Ct. 166 (2020); see also Habeck v. United States, 741 F. App'x 953 (4th Cir. 2018) (per curiam) (Dean not retroactive on collateral review); In re Dockery, 869 F.3d 356 (5th Cir. 2017) (per curiam) (summary order) (same).

Second Circuit district courts that have addressed the issue of whether Dean is retroactive likewise reason that "the right recognized by the Supreme Court in Dean was not made retroactively applicable to cases on collateral review".   United States v. Raghoonanan, Crim. No. 5:12-cr-00158-cr-1, 2018 WL 1084053 (D. Vt. Jan. 10, 2018), at *13,  adopted by 2018 WL 1083500 (D. Vt. Feb. 26, 2018); see Love v. United States, 282 F. Supp. 3d 571, 574 (W.D.N.Y. 2017) ("[T]here is no authority that Dean should be applied retroactively to cases on collateral review.").

In any event, even assuming Dean is retroactively applicable to this § 2255 motion, the Court made clear at sentencing that it "arrived at [Peebles'] total sentence, including the § 924(c) conviction, using its discretion under the § 3553 factors, which is consistent with Dean." Thomas v. United States, No. CV 16-3835 (RMB), 2019 WL 3815671, at *4 n.4 (D.N.J. Aug. 14, 2019); see Love, 282 F. Supp. 3d at 574 (holding in the alternative that, even if Dean applied to the petitioner's case, "[t]he Court considered all the Section 3553(a) factors at the time of sentencing and imposed a term for the predicate offences, as well as the firearms offense."); Raghoonanan, 2018 WL 1084053, at *13 ("Plainly the

24

court determined the appropriate sentence while recognizing the discretion afforded to sentencing courts . . . Given the severity of the offenses of conviction, moreover, there is no basis to conclude that the court would have imposed a lesser sentence under <u>Dean</u>. Instead, the evidence suggests that, within the constraints of the Plea Agreement, the court acknowledged its discretion in determining Raghoonanan's sentence for the conspiracy charge."). Therefore, the <u>Dean</u> claim is meritless.

## II.     Motion for Appointment of Counsel

Peebles requests appointment of counsel pursuant to 18 U.S.C. § 3006A, asserting that the Government has "conceded" in its "reply brief" that an evidentiary hearing is necessary to resolve factual disputes regarding his requests for pre-trial discovery material from the Government and Cantwell. (Dkt. No. 2379).  It is unclear why Peebles believes that the Government made a concession to hold an evidentiary hearing. In both memoranda filed in opposition to the § 2255 motion and the motion to amend (Dkt. Nos. 2178, 2340), the Government explicitly argues that all Peebles claims can and should be denied without a hearing.

In any event, Peebles has not established that the "interests of justice," 18 U.S.C. § 3006A, require appointment of counsel in this matter. The likely merit of a petitioner's habeas claims is central to the determination whether appointment of counsel at public expense is warranted. <u>See</u> <u>Carmona v. U.S. Bur. of Prisons</u>, 243 F.3d 629, 634–35 (2d Cir. 2001). As the Court has already found that Peebles' habeas claims are uniformly without merit, it would be inappropriate to appoint *pro bono* counsel. <u>See</u>, <u>e.g.</u>, <u>Harris v. United States</u>, No. 6:14-CR-6149 EAW, 2020 WL 4059198, at *2 (W.D.N.Y. July 20, 2020) (Because petitioner had "not alleged any viable claims, . . . the Court does not find

appointment of counsel appropriate."). And, since the Court also has found that an evidentiary hearing is unnecessary, Rule 8 of the Rules Governing Section 2255 Cases in the United States District Courts does not require the appointment of counsel.

Furthermore, the issue that Peebles wants to explore at an evidentiary hearing—his alleged lack of access to discovery—cannot form a basis for habeas relief given that he pleaded guilty. "A knowing and voluntary guilty plea waives all nonjurisdictional defects in the prior proceedings." United States v. Coffin, 76 F.3d 494, 496 (2d Cir. 1996) (citations omitted). The record definitively shows that Peebles' guilty plea was, in all respects, knowingly, voluntarily, and intelligently made, with full awareness of all his options and the consequences of his decision. Thus, his claims that he was denied access to discovery materials by Cantwell and the Government are, in addition to being factually baseless, precluded from collateral review.  See Hill v. West, 599 F. Supp. 2d 371, 392–93 (W.D.N.Y. 2009) (voluntary guilty plea precluded any constitutional claims concerning trial counsel's alleged pre-plea failure to investigate potential witnesses and acquire discovery material).

## CONCLUSION

For the reasons stated above, the § 2255 Motion (Dkt. No. 2105), as amended to include the new claims in the Motion to Amend/Correct (Dkt. No. 2194), is DENIED; and the Motion for Appointment of Counsel (Dkt. No. 2379) is DENIED.  Further, pursuant to 28 U.S.C. § 2253(c)(1) and Rule 11(a) of the Rules Governing Section 2255 Proceedings, the Court declines to issue a certificate of appealability because Peebles has not made a substantial showing of the denial of a constitutional right. Finally, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal taken from this decision would not

be taken in good faith. Thus, leave to appeal *in forma pauperis* is denied. Peebles is advised that "Federal Rule of Appellate Procedure 4(a) governs the time to appeal," and "[a] timely notice of appeal must be filed even" though the Court declined to issue a certificate of appealability. Rule 11(b) of the Rules Governing Section 2255 Proceedings.

The Clerk of Court shall take all steps necessary to close the parallel civil action, 17-CV-463-A.

**IT IS SO ORDERED.**

s/Richard J. Arcara

_____
HONORABLE RICHARD J.  ARCARA
UNITED STATES DISTRICT JUDGE

Dated:  January 31, 2022
        Buffalo, New York.